## CASHMAN *v.* AMADOR & SACRAMENTO CANAL COMPANY, & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

Submitted April 5, 1886.—Decided April 19, 1886.

On the facts stated in the opinion of the court, it is held that the assignment of the cause of action to the plaintiff in error was collusively made for the purpose of creating a case cognizable by the Circuit Court of the United States, and that the controversy is really and substantially between one of the counties of California and citizens of California, and is not properly within the jurisdiction of the Circuit Court.

The case is stated in the opinion of the court.

*Mr. A. L. Rhodes* for appellant.

*Mr. J. H. McKune* for appellees.

Mr. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an appeal under § 5. of the act of March 3, 1875, 18 Stat. 470, ch. 137, from an order of the Circuit Court dismissing

a suit, on the ground that it did not really and substantially involve a dispute or controversy properly within the jurisdiction of that court. The facts are these :

Cashman, the plaintiff, was an alien, and he owned a tract of seven hundred acres of land in Sacramento County, California, situated on the Cosumnes River, which it is claimed was injured by the mining débris thrown on it in the working of certain mines by hydraulic process. On the 9th of September, 1885, a bill in chancery was filed in the Circuit Court of the United States, in the name of Cashman, against the Amador and Sacramento Canal Company, a California corporation, and certain other defendants, all citizens of California, to restrain them from operating their mines so as to allow the débris to be deposited on his premises. Subpœnas were issued and served on some or all of the defendants, returnable on the 2d of November. On the return day a motion was made by some of the defendants, and among others the Amador and Sacramento Canal Company, to dismiss the suit for want of jurisdiction, and because it was commenced and prosecuted in violation of the provisions of § 5 of the act of March 3, 1875. At the hearing of this motion it appeared, by the admission of both parties, that the County of Sacramento and Cashman had, on or before the 6th of October, 1885, entered into a contract in writing, of which the following is a copy :

" Whereas the County of Sacramento desires to restrain the miners working by hydraulic process on the Cosumnes River and using the bed thereof as a place for the deposits and wastage of the tailings and débris from their mines ; and whereas it is desired to bring such suit in the Circuit Court of the United States for the District of California and in the ninth circuit ; and whereas George Cashman has brought, or is about to bring, such suit in said Circuit Court against the miners working on the Cosumnes River by hydraulic process ; and whereas the county of Sacramento is directly interested in the said suit and in the subject-matter of litigation, and the same is brought for its benefit, the county being unable to sue in such court ; and whereas the county of Sacramento, by a resolution duly passed by its board of supervisors on the 22d day of September, 1885,

has agreed to pay the costs and expenses of such suit, and to keep the said George Cashman safe and harmless from all counsel fees, costs, and charges to be paid or incurred therein :

" Now, therefore, this contract and indenture, made in pursuance of said resolution between the County of Sacramento, the party of the first part, and George Cashman aforesaid, party of the second part, witnesseth: That the party of the first part, the said County of Sacramento, does hereby stipulate, covenant, and agree to supply the said George Cashman with the services of competent attorneys, to wit, A. L. Rhodes, S. C. Denson, and Robert T. Devlin, to institute, conduct, and manage such suit, and does further covenant and agree to pay all the charges, costs, and expenses thereof or connected therewith, and to hold and keep him, the said George Cashman, safe and harmless from any costs, counsel fees, charges, or expenses to be paid or incurred in the institution, conduct, and prosecution of the said suit.

" The said George Cashman, the party of the second part, does hereby stipulate, covenant, and agree not to compromise, dismiss, or settle the said suit without the consent of the County of Sacramento, and to allow the said county and the attorneys aforesaid in its behalf to manage and conduct the said suit to the same extent and in the same manner as if such suit had been commenced by and was prosecuted in the name of the said County of Sacramento.

" In witness whereof the parties hereto, the party of the first —————— by the chairman of its board of supervisors, he being, by a resolution of said board passed September 22, 1885, duly thereunto authorized, have hereunto set their hands and seals this 26th day of September, 1885.

" This contract being executed in duplicate, each party retaining one.

[Seal of the Board of Supervisors of the County of Sacramento.]

" COUNTY OF SACRAMENTO,

" By L. H. FASSETT,
                    *Chairman Board of Supervisors.*
" GEO. CASHMAN.              [SEAL.] "

Upon this showing, there being nothing against it, the court granted the motion. To reverse an order to that effect this appeal was taken.

It is very apparent from the face of the agreement, on which the right to the dismissal depends, that the suit was originally brought by the County of Sacramento for its own benefit, and that the name of Cashman was used with his consent, because the county could not sue in its own name in the Circuit Court of the United States. The recital shows in express terms that the suit was brought for the benefit of the county, because it desired to restrain the miners from depositing the débris from their mines in the bed of the river, and it could not sue therefor in its own name in the courts of the United States. For this reason the county provided the attorneys who were to "institute, conduct, and manage such suit," and it agreed "to pay all the charges, costs, and expenses thereof or connected therewith, and to hold and keep . . . Cashman safe and harmless from any costs, counsel fees, charges, or expenses to be paid or incurred in the institution, conduct and prosecution of the suit." And Cashman, on his part, agreed "not to compromise, dismiss, or settle the . . . suit without the consent of the county, . . . and to allow the . . . county and the attorneys . . . in its behalf to manage and conduct the . . . suit to the same extent and in the same manner as if such suit had been commenced and prosecuted in the name of the county." From the very beginning the suit was and is in reality the suit of the county, with a party plaintiff "collusively made," "for the purpose of creating a case cognizable" by the Circuit Court of the United States under the act of March 3, 1875. While, therefore, the "dispute or controversy" "involved" is nominally between Cashman, an alien, and the defendants, citizens of California, it is "really and substantially" between one of the counties of California and citizens of that State, and thus not "properly within the jurisdiction" of the Circuit Court.

The order dismissing the suit is                                    *Affirmed.*